**U.S. COURT OF APPEALS CASE NO. 13-55575**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

─────────────────

### MULTI TIME MACHINE, INC.

*Plaintiff and Appellant*

vs.

### AMAZON.COM, INC. AND AMAZON SERVICES, LLC

*Defendants and Respondents*

─────────────────

## APPELLANT MULTI TIME MACHINE, INC.'S OPENING BRIEF

─────────────────

Appeal From The United States District Court,
Central District of California, Case No. CV11-09076-DDP (MANx),
Hon. Dean D. Pregerson

─────────────────

Eric Levinrad (CA Bar No. 169025)
    elevinrad@wrslawyers.com
Ryan J. Stonerock (CA Bar No. 247132)
    rstonerock@wrslawyers.com
WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP
11400 West Olympic Blvd., 9th Floor
Los Angeles, California 90064-1582
Telephone:  (310) 478-4100
Facsimile:   (310) 479-1422

Jeffrey R. Cohen (VA Bar No. 42467)
    cohen@mwzb.com
MILLEN, WHITE, ZELANO &
BRANIGAN, P.C.
2200 Clarendon Blvd., Suite 1400
Arlington, Virginia 22201
Telephone:  (703) 243-6333
Facsimile:   (703) 243-6410

*Attorneys for Plaintiff/Appellant*
MULTI TIME MACHINE, INC.

1441768.4

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, Appellant, Multi Time Machine, Inc., states that there is neither a parent corporation nor a publicly held corporation that owns 10% or more of its stock within the meaning of the rule.


DATED: September 26, 2013  WOLF, RIFKIN, SHAPIRO,
               SCHULMAN & RABKIN, LLP


          By: _____ /s/ Eric Levinrad _____
            ERIC LEVINRAD
          Attorneys for Appellant
          MULTI TIME MACHINE, INC.

1441768.4

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

Pursuant to Ninth Circuit Rule 28-2.1, the undersigned counsel for

Appellant, Multi Time Machine, Inc., certifies that the following listed parties have

a direct pecuniary interest in the outcome of the case.  These representations are

made to enable the Court to evaluate possible disqualification or recusal.

1.     Appellant, Multi Time Machine, Inc., whose principal place of

business is located in Los Angeles, California.


DATED: September 26, 2013          WOLF, RIFKIN, SHAPIRO,
                                   SCHULMAN & RABKIN, LLP


                              By:  _____/s/ Eric Levinrad_____
                                   ERIC LEVINRAD
                                   Attorneys for Appellant
                                   MULTI TIME MACHINE, INC.

1441768.4

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF JURISDICTION ............................................................1

II.   STATEMENT OF ISSUES ......................................................................2

III.  STATEMENT OF THE CASE ..................................................................2

      A.   NATURE OF THE CASE.................................................................2

      B.   PROCEDURAL HISTORY AND DISPOSITION BELOW ...............4

IV.   STANDARD OF REVIEW.......................................................................4

V.    STATEMENT OF FACTS ........................................................................5

      A.   THE PARTIES ................................................................................5

      B.   MTM'S DECISION NOT TO SELL ITS WATCHES TO
          AMAZON OR THROUGH AMAZON'S WEBSITE.........................6

      C.   AMAZON'S USE OF MTM'S TRADEMARKS TO SELL
          OTHER NON-MTM WATCHES.....................................................6

      D.   OTHER ON-RETAILERS' PRACTICE OF INFORMING
          CONSUMERS WHEN THEY DO NOT OFFER MTM
          WATCHES ......................................................................................10

      E.   ACTUAL CONFUSION RESULTING FROM AMAZON'S
          USE OF MTM'S MARKS ...............................................................11

VI.   SUMMARY OF ARGUMENT ..................................................................12

VII.  ARGUMENT ............................................................................................16

      A.   SUMMARY JUDGMENT ON THE ISSUE OF LIKELIHOOD
          OF CONFUSION IS DISFAVORED AND RARELY
          APPROPRIATE ...............................................................................16

      B.   WELL-ESTABLISHED NINTH CIRCUIT PRECEDENT
          MAKES CLEAR THAT PRODUCT OFFERINGS OR
          ADVERTISEMENTS ON THE INTERNET MUST BE

CLEARLY LABELED TO AVOID CONSUMER
CONFUSION AND LIABILITY UNDER THE LANHAM
ACT ...........................................................................................17

1.    *Brookfield Communications* Holds that Using Another's
Trademark in Metatags Constitutes a Violation of the
Lanham Act by Causing Initial Interest Confusion .................18

2.    In *Playboy Enterprises*, the Court Held the Use of
Trademark Terms to Trigger the Display of Unlabeled
Banner Advertisements Could Constitute a Violation of
the Lanham Act ........................................................................20

3.    In *Network Automation* the Court Found no Likelihood
of Confusion Resulting From Clearly-Labeled Sponsored
Links ........................................................................................22

C.    THE DISTRICT COURT ERRED IN GRANTING
SUMMARY JUDGMENT IN FAVOR OF AMAZON,
WHERE AMAZON'S SEARCH RESULTS ARE NOT
LABELED TO MAKE CLEAR THAT MTM WATCHES
ARE NOT BEING OFFERED ...........................................................24

1.    The District Court Erred by Failing to Properly Consider
the Absence of Labeling on Amazon's Search Results
Page .........................................................................................25

2.    Judge Berzon's Hypothetical to Which the Court Cited is
Inapposite ................................................................................30

D.    THE DISTRICT COURT ALSO ERRONEOUSLY APPLIED
THE *SLEEKCRAFT* FACTORS, BY IMPROPERLY
DISREGARDING SOME FACTORS AND MISAPPLYING
OTHERS ...........................................................................................33

1.    The District Court Erred in Ruling on Summary
Judgment that the Strength of MTM's Mark (Factor 1)
Weighs in Favor of Amazon .....................................................34

(a)    A Jury Could Property Determine that the MTM
Special Ops Mark is Conceptually Strong.....................34

-ii-

(b)     A Jury Could Properly Determine that the MTM
        Special Ops Mark is Commercially Strong ...................39

2.    The District Court Erroneously Ruled that Amazon
      Established an Absence of Actual Confusion and that
      This Factor (Factor 4) Weighed in Favor of Amazon .............40

3.    The District Court Erred by Deciding the "Degree of
      Care and Type of Goods" Factor (Factor 7) on Summary
      Judgment, without Considering All Evidence Pertinent to
      This Factor ................................................................43

4.    The District Court Failed to Consider Amazon's Intent in
      Using MTM's Marks .................................................44

5.    The District Court Failed to Properly Consider the
      Proximity of the Goods (Factor 2) and the Similarity of
      the Marks (Factor 3), Both of Which Favor MTM..................45

(a)     Proximity of the Goods (Factor 2)..................................46

(b)     Similarity of the Marks (Factor 3).................................47

VIII.  CONCLUSION...............................................................48

1441768.4

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*AMF Inc. v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979) ........................................................... 33, 43

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)............................................................................. 40

*Au-tomotive Gold Inc. v. Volkswagen of America, Inc.,*
  603 F.3d 1133 (9th Cir. 2010) ............................................................. 4

*Brookfield Communications v. West Coast Entertainment Corporation,*
  174 F.3d 1036 (9th Cir. 1999) ...................... 13, 18, 19, 21, 22, 24, 29, 37

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.,*
  618 F.3d 1025 (9th Cir. 2010) ...................... 16, 34, 35, 36, 37, 38, 39, 43

*GoTo.com, Inc. v. Walt Disney Co.,*
  202 F.3d 1199 (9th Cir. 2000) .............................................................. 37

*International Order of Job's Daughters v. Lindeberg & Co.,*
  633 F.2d 912 (9th Cir. 1980) ................................................................ 17

*Monsanto Chemical Co. v. Perfect Fit Products Manufacturing Co.,*
  349 F.2d 389 (2d Cir. 1965) ................................................................. 17

*Network Automation v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137 (9th Cir. 2011)
  ........................................ 14, 22, 24, 25, 26, 28, 32, 38, 40, 43, 44, 46, 47

*Playboy Enterprises, Inc. v. Netscape Communications Corp.,* 354 F.3d 1020 (9th Cir. 2004)
  .................4, 13, 20, 21, 22, 25, 26, 28, 29, 30, 31, 32, 42, 44, 45, 46, 48

*Rearden LLC v. Rearden Commerce, Inc.,*
  683 F.3d 1190 (9th Cir. 2012) ....................................................... 4, 5, 16

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
  59 F.3d 902 (9th Cir. 1995) .................................................................. 37

1441768.4

*Xen, Inc. v. Citrix Systems, Inc.,*
    WL 5289609 (C.D. Cal. 2012) ............................................................. 16

## Statutes

California Business & Professions Code
    § 17200 ........................................................................................................ 3

Federal Rules of Appellate Procedure
    FRAP 4(a)(1)(A) ......................................................................................... 1

United States Code
    15 U.S.C. § 1051 ......................................................................................... 1
    15 U.S.C. § 1121 ......................................................................................... 1
    28 U.S.C. § 1131 ......................................................................................... 1
    28 U.S.C. § 1138(a) .................................................................................... 1
    28 U.S.C.§ 1291 ......................................................................................... 1
    28 U.S.C. § 1367 ......................................................................................... 1

# I.

## STATEMENT OF JURISDICTION

(A)     This is an action for trademark infringement under the Lanham Act, 15 U.S.C. § 1051, *et seq*, which arises "under the Constitution, laws, or treaties of the United States," and over which the District Court had jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. sections 1331, 1338(a), and common law claims related to such Lanham Act claim, over which the District Court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

(B)     This is an appeal of the District Court's judgment, based on its order granting Defendant's Motion for Summary Judgment.  [Excerpt of Record "ER" at 2.]  Accordingly, this Court has jurisdiction over this appeal of a final decision of the District Court, pursuant to 28 U.S.C. § 1291.

(C)     Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A), "the notice of appeal . . . must be filed . . . within 30 days after the judgment or order appealed from is entered."  The District Court entered its Judgment and Order Granting Defendant's Motion for Summary Judgment ("Order") which are the subject of this appeal on February 20, 2013.  [ER 1, 2.]  MTM filed its Notice of Appeal on March 20, 2013.  [ER 26.]  Thus, the Notice of Appeal was timely filed and this Court may properly exercise subject matter jurisdiction.

1441768.4

(D)    This is an appeal from a final Judgment and Order Granting

Defendant's Motion for Summary Judgment that disposes of all parties' claims.

## II.

## STATEMENT OF ISSUES

Did the District Court err in finding no likelihood of confusion as a matter of

law, and granting summary judgment in favor of Amazon on MTM's[1] trademark

claim, where, after a prospective customer searches for MTM Special Ops watches

on Amazon's website, Amazon's results screen prominently displays the "MTM

Special Ops" trademark used as the search term, followed by the display of

numerous watches manufactured by MTM's direct competitors and offered for sale

by Amazon, without informing the customer that Amazon does not carry the MTM

Special Ops watches for which the customer searched?

## III.

## STATEMENT OF THE CASE

### A.    NATURE OF THE CASE

This case arises out of Amazon's practice, when a customer searches for a

specific product that Amazon does not carry, of displaying a search results page

that shows various competing products sold by Amazon, without at any time

---

[1] Appellant Multi Time Machine, Inc. is referred to herein as "MTM."
Respondents Amazon.com, Inc. and Amazon Services, LLC are collectively
referred to herein in the singular as "Amazon."

telling the customer that Amazon does not carry the product requested. As a result, the costumer is left with the mistaken impression that the product Amazon is offering is the requested product when in fact it is not.

After making a strategic business decision not to sell its watches through Amazon's website, either itself or through third party retailers, MTM discovered that when potential customers go to the Amazon website and search for its watches (for example, by searching for "mtm special ops") Amazon's results page displays a list of numerous competitors' watches sold by Amazon under a heading that not only repeats the "search term" but also impermissibly uses MTM's federally registered trademark in order to deceive those conducting the search. Amazon's results page does not inform the customer that the "MTM special ops" watch for which the customer searched is not available or that other alternative products are being offered in its place. Instead, the customer is left with the misleading impression that the products searched for are those displayed, when they in fact are not.

As a result, MTM filed a complaint in the district court asserting claims against Amazon for trademark infringement and unfair competition under the Lanham Act and common law, and also asserted a claim for a violation of California Business & Professions Code section 17200.

-3-

1441768.4

B.    PROCEDURAL HISTORY AND DISPOSITION BELOW

Amazon brought a motion for summary judgment in the District Court.  The District Court granted summary judgment in Amazon's favor, finding that no reasonable trier of fact could find a likelihood of confusion resulting from Amazon's use[2] of MTM's trademarks.  The District Court entered judgment in Amazon's favor as a result.  MTM appeals from that judgment and the order granting summary judgment upon which it was based.

## IV.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo*.  *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) ("We exercise de novo review over the District Court's summary judgment rulings in favor of Rearden Commerce."); *see also Au-tomotive Gold Inc. v. Volkswagen of America, Inc.,* 603 F.3d 1133, 1135 (9th Cir. 2010) ; *Playboy Enterprises, Inc. v. Netscape*

---

[2] In light of its ruling on likelihood of confusion, the District Court did not resolve the issue of whether Amazon is using the mark in commerce.  However, the District Court correctly noted that "the Ninth Circuit has held that the use of a trademark as a search engine keyword that triggers the display of a competitor's advertisement is a 'use in commerce' under the Lanham Act."  ER 10, citing *Network Automation*, 638 F.3d at 1144-45.  The District Court further noted that "because Amazon's use [of the MTM trademarks] is in connection with the sale of goods, it appears likely to be a 'use in commerce' both in the jurisdictional sense and with respect to the statutory meaning."  The District Court's conclusion in this regard was correct and consistent with Ninth Circuit precedent.  In any event, this portion of the District Court's ruling was not appealed by Amazon, and therefore need not and should not be revisited here.

-4-

*Communications Corp.,* 354 F.3d 1020 (9th Cir. 2004) .  In exercising such *de novo* review, all evidence must be viewed in the light most favorable to the non-moving party.  *Rearden*, *supra* at 1202 ("Viewing the evidence in the light most favorable to [the non-moving party], we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.")

**V.**

**STATEMENT OF FACTS**

A.    THE PARTIES

MTM is a watch manufacturer founded in 1990, which manufactures and sells military style watches under numerous brand names, including MTM Special Ops and MTM Military Ops.  [ER 228, 286.]  MTM owns the registered trademarks for MTM Special Ops and MTM Military Ops, among other trademarks.  [ER 279, 441-464.]

Amazon is a large on-line retailer, whose "mission as a retailer is to be the world's most customer-centric company."  [ER 240, 245.]  According to Amazon, it "opened its virtual doors on the World Wide Web in 1995 and offers Earth's Biggest Selection of products."  [ER 227, 240.]  Amazon has designed its website to enable millions of unique products to be sold by both Amazon and third party sellers across dozens of product categories.  *Id.*

-5-

B.   <u>MTM'S DECISION NOT TO SELL ITS WATCHES TO AMAZON OR THROUGH AMAZON'S WEBSITE</u>

MTM sells its watches directly through its own website and also sells its watches through a limited number of authorized distributors. [ER 3, 291, 293.] MTM has made a strategic decision not to sell its watches through Amazon's website. In this regard, MTM does not sell its watches to Amazon for resale on the Amazon.com website. [ER 3, 228-229, 293-294.] Neither does MTM permit any of its authorized distributors to sell its watches through the Amazon.com website. [ER 3, 293-294.] As a result, MTM's watches are not available for sale on the Amazon.com website.

C.   <u>AMAZON'S USE OF MTM'S TRADEMARKS TO SELL OTHER NON-MTM WATCHES</u>

When a potential customer looking for an MTM watch (e.g. an MTM Special Ops watch), searches for that watch on Amazon's website by using MTM's trademark (e.g. "mtm special ops" as a search term), the customer is presented with the following results screen:



[ER 229, 253.][3]

Rather than displaying the MTM watches for which the customer expressly searched or informing the customer that those watches are not available, Amazon's results page displays watches manufactured by Luminox and Chase-Durer. As Amazon concedes, these watches "are very similar to the MTM Special Ops watches and are, in fact, direct competitors." [ER 232, 294.] A visual comparison

----

[3] The screenshot presented here is a recent search results page showing the results of Amazon.com search for "mtm special ops." The screenshot is a more recent, color version of the screenshot attached as Exhibit "A" to the Declaration of Paul Jaye ("Decl. Jaye") [ER 229, 253].

of MTM's watches and the Luminox watches displayed by Amazon makes clear how visually similar the Luminox watches and MTM watches are:



[ER 208, 214.][4]

The very first line of Amazon's results screen states: "Search All mtm special ops." Directly below, the words "mtm special ops" appear in larger orange-colored font, in quotation marks. While Amazon contends that this is a mere "bread crumb," which sets forth the search term entered by the customer, this could also easily be viewed as the title of the search results displayed below. Indeed, in the context of search engines, quotes typically denote to a user that an

---

[4] The side by side screenshot presented here are from screenshots used in the report of Appellant's expert, William Alexander Markson ("Markson Report") [ER 208, 214].

exact phrase is being used. [ER 209.] Some users with sufficient computer

experience may know that when they type keywords into a search field using

quotes, they are forcing the system to search for that very specific phrase and not

deviate from it at all in the results. *Id.* MTM's expert offered the opinion that

"some of these users may see this nomenclature on the results [i.e. the use of

quotes around the search term on Amazon's results page] as having similar

significance with regards to the presence of their keywords, especially in the

absence of any other labeling. *Id.*

Then, directly under the "mtm special ops" line is a line that states "Related

Searches: mtm special ops watch mtm watch." Below the Related Searches line is

a gray bar, with the words "Showing 7 Results" on it. In other words, when a

customer searches for an "mtm special ops" watch on Amazon.com's website, the

top of the search results page displays MTM's trademarks, in whole or in part, no

fewer than four separate times, before displaying the result, without once

informing the customer that Amazon does not carry MTM Special Ops watches.

Displayed below the gray "Showing 7 Results" bar are various watches sold

by Amazon which are made by various competitors of MTM, such as Luminox. In

the above search screen the first displayed result is a watch entitled "Luminox

Men's 8401 Black Ops," with the words "by Luminox" written in smaller font to

the right of that title. A customer interested in purchasing one of the watches

-9-

displayed, clicks on the image and is then taken to a screen which provides additional information regarding that product, with the customer's search term "mtm special ops watch" set forth at the top of the product information page. That page also has a link for the customer to click on to purchase the displayed item.

Finally, a second set of results appears below the first set, entitled "Results for "~~mtm~~ special ops." [ER 209.] The search terms on the second result set contain the term "mtm" with a strike-through. *Id.* This suggests that the first set of results contains the term "mtm" since it is displayed in a similar manner, but without the strike through. [ER 209-210.]

D.   OTHER ON-RETAILERS' PRACTICE OF INFORMING CONSUMERS WHEN THEY DO NOT OFFER MTM WATCHES

In contrast to Amazon, other on-line retailers who do not carry MTM Special Ops watches clearly inform their customers who search for such watches that they do not offer them for sale, before suggesting alternative watches to the customer. For example, on buy.com, when a customer searches for "mtm special ops," the customer is presented with a search results screen which states: "0 results found . . . Sorry, your search for mtm special ops did not return an exact match. Please try your search again." [ER 215.] Similarly, when a customer searches for "mtm special ops" on Overstock.com, the customer is presented with a results

-10-

screen which states "Sorry, your search: 'mtm special ops' returned no results."
[ER 216.]

Noting that other on-line retailers label their search results to inform customers that they do not have the product searched for, the District Court observed: "I think the question comes down to, does Amazon have an affirmative duty under the facts of this case to say, We don't have that. Here are some other choices, or is it sufficient to do what they've done, which is just to take you to a page that has a - - a bunch of watches that have names that are distinct from your client's products." [ER 54.] In granting summary judgment in favor of Amazon, the District Court incorrectly answered this question in the negative and found that Amazon's practice in this regard was sufficient as a matter of law. In so doing, the District Court erred for the reasons discussed herein.

E.    ACTUAL CONFUSION RESULTING FROM AMAZON'S USE OF
       MTM'S MARKS

Amazon acknowledges that MTM has anecdotal evidence of its customers being confused by Amazon's search screen. Amazon dismisses this evidence as too vague and contends that it does not establish confusion. Amazon claims that its evidence establishes an absence of actual confusion and the District Court accepted this contention. However, if anything, the evidence presented by Amazon confirms MTM's anecdotal evidence of actual confusion.

-11-

1441768.4

For example, Amazon concedes ████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████[5] [ER

232, 241-242.]  Additionally, Amazon presented evidence that it contended

establishes that a customer who searched for a Luminox watch was 21 times more

likely to purchase a Luminox watch than a customer who searched for an MTM

watch.  [ER 19; ER 250-251.]  But this same evidence establishes that at least

some customers who searched for an MTM Special Ops Watch in fact purchased a

Luminox watch.  Amazon has presented no evidence to conclusively refute the

possibility that at least some of those purchases were made as a result of customer

confusion as to whether the watches purchased were affiliated with MTM, which at

least led to the customer's initial interest in the watch ultimately purchased.

## VI.

## SUMMARY OF ARGUMENT

The district court erred in granting summary judgment in favor of Amazon

on MTM's action for trademark infringement based on Amazon's use of MTM's

---

[5] The redacted text in Appellant's Opening Brief contains confidential information that have been redacted from the District Court Record pursuant to the Protective Order entered by the District Court on July 10, 2012 (filed as Doc. #28). Appellant will file paper copies of its unredacted Opening Brief and unredacted volumes of its Excerpts of Record under seal pursuant to Ninth Circuit Rule 27-13. Appellant is also filing a separately captioned notification setting forth the reasons the sealing is required pursuant to Ninth Circuit Rule 12-13(b).

-12-

"MTM Special Ops" trademark to sell other non-MTM watches. As a preliminary matter, likelihood of confusion is an intensely factual analysis, which is rarely suitable for determination by summary judgment, and the District Court erred in disposing of this issue by summary judgment here.

In granting Amazon's motion for summary judgment despite the absence of clear labeling informing the consumer that Amazon does not offer the MTM watches for which the customer searched, the District Court diverged from a long line of Ninth Circuit precedent. Since the infancy of the internet, the Ninth Circuit has carefully balanced the rights of internet merchants to fairly sell their products, with the obligation not to infringe on the trademarks of others. In *Brookfield Communications v. West Coast Entertainment Corporation*, 174 F.3d 1036 (9th Cir. 1999), the Court held that using another's trademark in metatags to attract persons searching for that trademark could potentially create initial interest confusion – and liability under the Lanham Act. Next, in *Playboy Enterprises v. Netscape Communications Corporation*, 354 F.3d 102 (9th Cir. 2004), the Court held that when a search engine used trademark terms as keyed words in its search box, which triggered the display of unlabeled banner advertisements, genuine issues of material fact existed regarding the likelihood of consumer confusion resulting from the Defendant's use of the Plaintiff's marks. Once again, the Court made clear that liability could arise based on initial interest confusion, even when the user realized,

-13-

upon clicking on the unlabeled banner advertisement, that it was not affiliated with Playboy, the trademark holder. Finally, in *Network Automation v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011), the Ninth Circuit considered whether Network Automation's use of the ActiveBatch trademark to advertise its products through keyword advertising constituted a violation of the Lanham Act. Although the Ninth Circuit reversed a preliminary injunction against such practices, the Court made clear that the fact that the sponsored advertisements triggered by the keywords searched were clearly labeled as sponsored links was central to its decision.

The common thread in each of these cases is that liability under the Lanham Act can only be avoided as a matter of law where there is clear labeling to avoid the possibility of confusion – including initial interest confusion – resulting from the use of another's trademark. But absent clear labeling or other measures communicating that the searcher is not viewing a product, advertisement or website of the trademark owner, liability can arise under the Lanham Act as a result of that possible confusion. Absent such clear labeling, a trademark infringement suit under these circumstances cannot properly be disposed of on summary judgment.

Here, the District Court erred by granting summary judgment in Amazon's favor, even though there is no labeling on Amazon's results page informing the

-14-

customer that the MTM watches for which the customer searched are not available or that Luminox is not affiliated with MTM. That the watches on the search screen are identified as "Luminox" watches "by Luminox," is not sufficient to support summary judgment in Amazon's favor, because a consumer could infer, from the top of the search page which has the words "mtm special ops watch" set forth in three different places that the Luminox watches displayed are types of MTM Special Ops watches. Whether the Luminox brand is sufficiently well known to avoid the likelihood of such confusion is part of the factual inquiry for the jury, and is not appropriate for determination on summary judgment. By granting summary judgment despite Amazon not clearly labeling its results page to state that it does not sell the MTM watches for which the customer searched, the District Court diverged from the Ninth Circuit's authority requiring such labeling to support an award of summary judgment in this context.

The District Court further erred in its application of the *Sleekcraft* factors, by deciding certain of those factors as a matter of law rather than submitting them to the jury and by failing to consider others, which weighed in favor of a finding of a likelihood of confusion. As a result, the District Court erred in finding no likelihood of confusion as a matter of law and granting summary judgment in favor of Amazon.

-15-

# VII.

# ARGUMENT

A.    SUMMARY JUDGMENT ON THE ISSUE OF LIKELIHOOD OF
       CONFUSION IS DISFAVORED AND RARELY APPROPRIATE

As a preliminary matter, summary judgment on the issue of likelihood of

confusion is disfavored because of its multi-prong inquiry and fact intensive

nature.  As the Court explained in *Fortune Dynamic, Inc. v. Victoria's Secret

Stores Brand Management, Inc.*, 618 F.3d 1025 (9th Cir. 2010):

> This case is yet another example of the wisdom of the
> well-established principle that '[b]ecause of the intensely
> factual nature of trademark disputes, summary judgment
> is generally disfavored in the trademark arena.'
> *Entrepreneur Media,* 279 F.3d at 1140 (quotation marks
> omitted).  We are far from certain that consumers were
> likely to be confused as to the source of Victoria's
> Secret's pink tank top, but we are confident that the
> question is close enough that it should be answered as a
> matter of fact by a jury, not as a matter of law by a court.

*See also Rearden*, *supra*, at 1202, 1210; *Xen, Inc. v. Citrix Systems, Inc.* 2012 WL

5289609 at \*3 and \*5 (C.D. Cal.) (Pregerson, J.) (citing *Au-Tomotive Gold, Inc. v.

Volkswagen of Am., Inc.,* 457 F.3d 1062, 1075 (9th Cir. 2006)).  Thus, summary

judgment is "rarely appropriate," *Xen* at \*5, and granted "sparingly, as careful

assessment of the pertinent factors that go into determining likelihood of confusion

usually requires a full record." *Rearden,* 683 F.3d at 1210.

B.   <u>WELL-ESTABLISHED NINTH CIRCUIT PRECEDENT MAKES CLEAR
THAT PRODUCT OFFERINGS OR ADVERTISEMENTS ON THE
INTERNET MUST BE CLEARLY LABELED TO AVOID CONSUMER
CONFUSION AND LIABILITY UNDER THE LANHAM ACT</u>

The Ninth Circuit has established a line of precedent, dating back to the
infancy of the internet, which carefully balances the needs of internet commerce
with the obligation imposed by the Lanham Act to avoid the likelihood of
consumer confusion and trademark infringement.  In the internet context, when
another entities' trademarks are used, Lanham Act liability can only be avoided as
a matter of law where steps are taken to avoid consumer confusion regarding what
products are being viewed or accessed.  This line of Ninth Circuit precedent is
consistent with "[t]he basic policy behind the Lanham Act [which is] is to protect
customers against likelihood of confusion."  *International Order of Job's
Daughters v. Lindeberg & Co.*, 633 F.2d 912, 917 (9th Cir.1980), cert. denied, 452
U.S. 941 (1981); *Monsanto Chemical Co. v. Perfect Fit Products Manufacturing
Co.*, 349 F.2d 389, 395 (2d Cir.1965), cert. denied, 383 U.S. 942 (1966).

-17-

1441768.4

1.     *Brookfield Communications* **Holds that Using Another's Trademark in Metatags Constitutes a Violation of the Lanham Act by Causing Initial Interest Confusion**

The Ninth Circuit addressed the intersection between internet commerce and the requirements of the Lanham Act in *Brookfield Communications v. West Coast Entertainment Corporation*, 174 F.3d 1036 (9th Cir. 1999). In *Brookfield*, the Court held that the defendant's use of the www.moviebuff.com domain name and the use of "MovieBuff" in its metatags to attract internet searchers constituted infringement of the Plaintiff's MovieBuff trademark. In reaching this conclusion, the *Brookfield* court stated that the district court had "apparently assumed that likelihood of confusion exists only when consumers are confused as to the source of a product they actually purchase." *Id* at 1057. In fact, *Brookfield* noted that "[i]t is, however, well established that the Lanham Act protects against the many other forms of confusion that we have outlined." In particular, *Brookfield* explained:

> Yet other forms of confusion are likely to ensue. Consumers may wrongly assume that the 'MovieBuff' database they were searching for is no longer offered, having been replaced by West Coast's entertainment database, and thus simply use the services at West Coast's web site. *See, e.g., Cardservice Int'l*, 950 F.Supp. at 741. And even where people realize, immediately upon accessing 'moviebuff.com,' that they have reached a site operated by West Coast and wholly unrelated to Brookfield, West Coast will still have gained

-18-

> a customer by appropriating the goodwill that Brookfield
> has developed in its 'MovieBuff' mark. A consumer
> who was originally looking for Brookfield's products or
> services may be perfectly content with West Coast's
> database (especially as it is offered free of charge); but he
> reached West Coast's site because of its use of
> Brookfield's mark as its second-level domain name,
> which is a misappropriation of Brookfield's goodwill by
> West Coast.

*Id.* at 1057.

The *Brookfield* court found that the defendant's use of moviebuff.com in

metatags "will still result in what is known as initial interest confusion." *Id.* at

1062. In support of this ruling, the Court explained:

> Web surfers looking for Brookfield's 'MovieBuff'
> products who are taken by a search engine to
> 'westcoastvideo.com' will find a database similar enough
> to 'MovieBuff' such that a sizeable number of consumers
> who were originally looking for Brookfield's product
> will simply decide to utilize West Coast's offerings
> instead. Although there is no source confusion in the
> sense that consumers know they are patronizing West
> Coast rather than Brookfield, there is nevertheless initial
> interest confusion in the sense that, by using
> 'moviebuff.com' or 'MovieBuff' to divert people looking
> for 'MovieBuff' to its web site, West Coast improperly
> benefits from the goodwill that Brookfield developed in
> its mark.

*Id.*

In support of its holding with respect to the use of metatags, the *Brookfield*

Court explained that "[u]sing another's trademark in one's metatags is much like

posting a sign with another's trademark in front of one's store." *Id.* at 1064.

-19-

1441768.4

**2.**     **In *Playboy Enterprises*, the Court Held the Use of Trademark Terms to Trigger the Display of Unlabeled Banner Advertisements Could Constitute a Violation of the Lanham Act**

The Ninth Circuit again considered the application of the Lanham Act to the internet in *Playboy Enterprises v. Netscape Communications Corporation*, 354 F.3d 102 (9th Cir. 2004). *Playboy Enterprises* involved a search engine's use of Playboy's trademarks in lists for "keyed" banner advertisements. When a user typed one of the trademarked terms (e.g. "playboy"), other companies' banner ads appeared on the results page with an invitation for the user to "click here." *Id.* at 1023. When a user clicks on the banner ad, he is directed on the advertiser's website. *Id.* The Ninth Circuit reversed the District Court's granting of summary judgment in favor of the defendants, finding that genuine issues of material fact existed regarding the likelihood of consumer confusion resulting from the Defendant's use of PEI's marks. In particular, the Court found summary judgment inappropriate with respect to initial interest confusion. The Court explained:

> In this case, PEI claims that defendants, in conjunction with advertisers, have misappropriated the goodwill of PEI's marks by leading Internet users to competitors' websites just as West Coast video misappropriated the goodwill of Brookfield's mark. Some consumers, initially seeking PEI's sites, may initially believe that unlabeled banner advertisements are links to PEI's sites or to sites affiliated with PEI. Once they follow the instructions to 'click here,' and they access the site, they may well realize that they are not at a PEI-sponsored site.

-20-

> However, they may be perfectly happy to remain on the competitor's site, just as the Brookfield court surmised that some searchers initially seeking Brookfield's site would happily remain on West Coast's site. The Internet user will have reached the site because of defendants' use of PEI's mark. Such use is actionable.

*Id*. at 1025-26.

Notably, in *Playboy Enterprises*, the court illuminated its holding by making clear what was *not* at issue in that case. The Court explained:

> [W]e are not addressing a situation in which a banner advertisement clearly identifies its source with its sponsor's name, or in which a search engine clearly identifies a banner advertisement's source. We are also not addressing a situation in which advertisers or defendants overtly compare PEI's products to a competitor's — saying, for example 'if you are interested in Playboy, you may also be interested in the following message from[a different, named company].' Rather, we are evaluating a situation in which defendants display competitors' unlabeled banner advertisements, with no label or overt comparison to PEI, after Internet users type in PEI's trademarks.

*Id*. at 1030.

*Playboy Enterprises*, like *Brookfield* which preceded it, makes clear that when using another's trademark on the internet, whether in metatags or in keyed advertising, Lanham Act liability lies when the consumer is confused, even briefly, and such confusion is not avoided by clear labeling to avoid any possible confusion by the consumer.

In a concurring opinion in *Playboy Enterprises*, Judge Berzon cautioned against extending *Brookfield* to hold that there could be a Lanham Act violation even where the search results are clearly labeled. She cautioned that "*Brookfield* might suggest that there could be a Lanham Act violation *even if* the banner advertisements were clearly labeled, either by the advertiser or by the search engine. I do not believe that to be so." *Id*. at 1034. While cautioning against an overextension of the holding of *Brookfield*, Judge Berzon did not bring into question – and in fact emphasized – the principle that liability under the Lanham Act can arise where the consumer is initially confused as a result of the use of the trademark of another, and where such initial interest confusion is not prevented by clear labeling or otherwise.

**3.     In *Network Automation* the Court Found no Likelihood of Confusion Resulting From Clearly-Labeled Sponsored Links**

Subsequently, in *Network Automation v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011), the Ninth Circuit addressed whether a company can use its competitors trademarks as part of a keyword advertising strategy, so that when a consumer searches for the competitor's trademark, the other company's sponsored advertisement appears on the results page. Specifically, in *Network Automation* the Court considered whether Network Automation's use of the ActiveBatch trademark to advertise its products through keyword advertising was a

-22-

legitimate use of readily available technology or a violation of the Lanham Act. While the Ninth Circuit reversed the District Court's grant of a preliminary injunction against Network Automation, central to its decision was the fact that the sponsored advertisements triggered by the keywords searched were clearly labeled as sponsored links.

Indeed, in addressing this issue, the Court added the labeling and appearance of the sponsored advertisements as an important factor to consider in the internet context in addition to the *Sleekcraft* factors. The Court explained:

> In the keyword advertising context the 'likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context.' *Hearts on Fire Co. v. Blue Nile, Inc.*, 603 F. Supp. 2d 274, 289 (D. Mass. 2009). In *Playboy*, *we found it important that the consumers saw banner advertisements that were 'confusingly labeled or not labeled at all*.' 354 F.3d at 1023. We noted that clear labeling 'might eliminate the likelihood of initial interest confusion that exists in this case.' *Id*. at 1030 n.43. The appearance of the advertisements and their surrounding context on the user's screen are similarly important here. The district court correctly examined the text of Network's sponsored links, concluding that the advertisements did not clearly identify their source. However, the district court did not consider the surrounding context. In *Playboy*, *we also found it important that Netscape's search engine did not clearly segregate the sponsored advertisements from the objective results.* 354 F.3d at 1030. Here, even if Network has not clearly identified itself in the text of its ads, *Google and Bing have partitioned their search results pages so that the advertisements appear in separately labeled sections for "sponsored" links.* The

-23-

labeling and appearance of the advertisements as they
appear on the results page includes more than the text of
the advertisement, and must be considered as a whole.

*Id*. (Emphasis added.)

Thus, *Network Automation* follows *Brookfield* and *Playboy Enterprises* in making clear that Lanham Act liability lies where an internet user is misled regarding the site, advertisement or product viewed, even if such initial interest confusion is quickly resolved. While finding there was no confusion where the Defendant's link was placed in a separate section of the search result screen clearly labeled as "Sponsored Links," *Network Automation* does not undermine the principle that Lanham Act liability arises where an internet user is likely to be misled regarding the site, advertisement or product viewed as the result of the use of another's trademark.

C.     THE DISTRICT COURT ERRED IN GRANTING SUMMARY
       JUDGMENT IN FAVOR OF AMAZON, WHERE AMAZON'S SEARCH
       RESULTS ARE NOT LABELED TO MAKE CLEAR THAT MTM
       WATCHES ARE NOT BEING OFFERED

In granting Amazon's motion for summary judgment, the District Court diverged from the Ninth Circuit's long line of precedent holding that when trademarks are used in search engines or otherwise on the internet, search results must be clearly labeled to avoid customer confusion. In concluding that summary

-24-

judgment was warranted, the District Court failed to properly apply the Ninth Circuit's precedent requiring that proper labeling be employed to avoid consumer confusion. The District Court also erred by relying on a hypothetical from Judge Berzon's concurring opinion in *Playboy Enterprises* which is inapposite to the facts of the instant case.

### 1. The District Court Erred by Failing to Properly Consider the Absence of Labeling on Amazon's Search Results Page

As discussed above, *Network Automation*, citing *Playboy Enterprises,* made clear that the labeling and context of the displayed search results were an important factor – in addition to the *Sleekcraft* factors – in determining whether there is a likelihood of confusion in the context of internet search pages. The *Network Automation* Court cited *Playboy Enterprises* on this point, explaining: "In Playboy, we found it important that the consumers saw banner advertisements that were 'confusingly labeled or not labeled at all.'" *Id.* at 1153-1154.

In its order granting summary judgment in favor of Amazon, the District Court acknowledged that "the same central issue is at play where online retail search results are concerned." [ER 22.] In fact, the need for clear labeling is far greater in the context of an online retailer such as Amazon than it is in the context of a search engine such as Google. Online retailers such as Amazon offer specific products for sale, while search engines such as Google provide a broad range of

information related to a search term entered.  As such, when a customer searches for a specific product on an online retailer's website, such as the Amazon.com website, there is likely a greater expectation that the results offered for sale will be the product for which the customer searched.  In contrast, when a customer performs a search on a search engine such as Google, the customer's expectation is not to be offered specific products which conform to the search, but rather to be provided with a broad range of information related to the search term entered.  Therefore, clear labeling is even more important in the context of an on-line retailer – especially one like Amazon, whose self-described mission is to be the "most customer-centric company in the world"[6] – than it is in the context of a search engine, where such labeling is already required by Ninth Circuit precedent.

While acknowledging  that "the same central issue is at play [with respect to the requirement for labeling] where online retail search results are concerned," the District Court erred by failing to acknowledge, analyze or address Amazon's failure to clearly label its search results to make clear that the requested item was not available, and that other suggested alternatives were displayed.  Instead of considering and addressing the lack of labeling on the search page, as *Network Automation* and *Playboy Enterprises* require, the District Court confined its

---

[6] ER 240, 245.

analysis of this factor to a critique of MTM's expert's report.  [ER 22-23.]  The District Court erred in this regard.

In fact, Amazon's results page does not label its search results to make clear that the products displayed are not the products searched for, rendering summary judgment in Amazon's favor inappropriate.  When a consumer searches for "MTM special ops"  he or she is presented with the following search screen:



The top of the results screen shows the term "mtm special ops" three separate times, above a gray bar, which states "Showing 1-7 results."  In the absence of labeling stating that Amazon does not carry MTM Special Ops watches or something to that effect, a reasonable consumer reviewing this results screen

-27-

could certainly conclude that the results displayed are in fact MTM Special Ops watches, even though they are not. While it is true that the watches displayed are identified as "Luminox" models with the words "by Luminox" in noticeably smaller font, given the appearance of these watches under the display entitled "mtm special ops watches," a reasonable consumer could certainly conclude that Luminox watches are types of watches offered by MTM. Whether this is sufficient to have prevented any likelihood of confusion should have been decided by the jury rather than by the District Court on summary judgment.

Such possible confusion could easily be avoided by providing clear labeling that the watches displayed are not MTM Special Ops watches. Indeed, just as the *Playboy Enterprises* court made clear that summary judgment was inappropriate in that case because the banner advertisements were not labeled as such, and just as the *Network Automation* Court found that a preliminary injunction was warranted in light of the clear labeling of the sponsored links as "sponsored links," so here summary judgment would only have been appropriate if Amazon had clearly labeled its search results to communicate that the watches displayed on the results page were not the MTM Special Ops watches for which the customer had searched, as numerous other on-line retailers do. By granting Amazon's motion for summary judgment in the absence of such labeling, the District Court has erred and diverged from the Ninth Circuit's authority.

1441768.4

In its summary judgment motion, Amazon made much of the fact that a consumer who came across the search results would have had to click on a product picture, which would have led the consumer to a separate screen from where the purchase would be made, and that this screen contained much more information about the product, dispelling any likelihood of confusion. [ER 231, 247, 257, 259-262, 277, 297.] Even if true, however, *Playboy Enterprises* makes clear that that would not be sufficient to prevent the possibility of initial interest confusion to support summary judgment. Indeed, in *Playboy Enterprises*, the Court reasoned: "Some consumers, initially seeking PEI's sites, may initially believe that unlabeled banner advertisements are links to PEI's sites or to sites affiliated with PEI. Once they follow the instructions to 'click here,' and they access the site, they may well realize that they are not at a PEI-sponsored site. However, they may be perfectly happy to remain on the competitor's site, just as the *Brookfield* court surmised that some searchers initially seeking Brookfield's site would happily remain on West Coast's site. The Internet user will have reached the site because of defendants' use of PEI's mark. Such use is actionable." *Playboy Enterprises, supra* at 1025-1026.

Similarly, in this case, some customers who are looking to buy an MTM Special Ops Watch may initially believe that the Luminox watches appearing on Amazon's search results screen are watches made by or otherwise affiliated with

-29-

MTM. Once they click on the Luminox watch and are provided more information about that watch, they might come to realize that it is not, in fact, an MTM watch. But they might be perfectly happy to then purchase the Luminox watch from Amazon instead of the MTM watch for which they initially searched. However, this customer will have reached the purchase page and purchased the Luminox watch because of Amazon's use of MTM's mark on its search results page. Here, as in *Playboy Enterprises*, such use is actionable and the District Court erred by granting summary judgment in Amazon's favor.

**2.      Judge Berzon's Hypothetical to Which the Court Cited is Inapposite**

In support of its ruling erroneously granting summary judgment in favor of Amazon, the District Court favorably cited the hypothetical presented by Judge Berzon in her concurring opinion in *Playboy Enterprises*. But this hypothetical is inapposite to the instant case. Judge Berzon imagines a hypothetical customer who walks into Macy's, asks for the Calvin Klein section, and is directed to the second floor. *Playboy Enterprises*, *supra* at 1035. As such, in Judge Berzon's hypothetical, Macy's has a "Calvin Klein section" and carries Calvin Klein products. As a result, there is nothing deceptive, misleading or confusing in the Macy's clerk responding to the customer's inquiry by directing the customer to the second floor, where the Calvin Klein section is located, and no infringement if the

-30-

customer comes across Macy's competing line of products on the way. But this hypothetical is inapposite to the instant case, because here it is undisputed that Amazon does not sell MTM watches. [ER 3, 228-229, 293-294.] When a customer asks for MTM watches, instead of being directed by Amazon to the MTM watch section, the customer is presented with a screen of watches with no labeling telling the customer that Amazon does not carry MTM watches. [ER 229, 246, 253.]

A more relevant hypothetical would be to imagine that Macy's did not carry Calvin Klein products, and the clerk, in responses to the customer's inquiry, told the customer that the "Calvin Klein" section was located on the second floor, knowing that no Calvin Klein products were sold but hoping that the customer, once on the second floor, would purchase Macy's own product instead of the Calvin Klein product which the customer requested. Suppose further that the Charter Club products were located under a display with the words "Calvin Klein" above it. Under these circumstances, a reasonable jury could conclude that there was a likelihood of confusion, and that Macy's had infringed on the Calvin Klein mark by improperly benefitting from Calvin Klein's goodwill in its mark. This is true even if the customer realized before actually purchasing the product that it was not in fact a Calvin Klein garment. *See Playboy Enterprises*, *supra* at 1035; *Brookfield*, *supra* at 1064.

-31-

Judge Berzon's on-line hypothetical is inapposite for a similar reason. Judge Berzon asks "If I went to Macy's website and did a search for a Calvin Klein shirt, would Macy's violate Calvin Klein's trademark if it responded (as does Amazon.com for example) *with the requested shirt* and pictures of other shirts I might like to consider as well? I very much doubt it." *Playboy Enterprises*, *supra* at 1035. (Emphasis added.) Again, in this hypothetical, the on-line retailer offers the requested product for sale, and in response to a search for that product offers the requested product, as well as other presumably clearly-labeled alternatives. Under the Ninth Circuit's precedent, this would not constitute infringement. However, if the customer went to Macy's website and did a search for a Calvin Klein shirt, and the website displayed other shirts in response to the search, with "Calvin Klein shirt" set forth in several places above the search results, without informing the customer that it does not carry Calvin Klein shirts, a reasonable jury could certainly find that Macy's had infringed on the Calvin Klein mark by improperly using Calvin Klein's trademark in such a way that there is a reasonable likelihood of confusion as a result of displaying search results offering competing products without clearly labeling them as such. This conclusion is consistent with *Brookfield*, *Playboy Enterprises*, and *Network Automation*. Granting summary judgment in favor of Macy's under these hypothetical circumstances would diverge from and erroneously apply the standards articulated by the Ninth Circuit

-32-

in these cases, just as the District Court's grant of summary judgment in favor of Amazon did here.

D.    <u>THE DISTRICT COURT ALSO ERRONEOUSLY APPLIED THE *SLEEKCRAFT* FACTORS, BY IMPROPERLY DISREGARDING SOME FACTORS AND MISAPPLYING OTHERS</u>

The factors for determining likelihood of confusion are: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

In *Network Automation*, the Court found that "[g]iven the nature of the alleged infringement here, the most relevant factors to the analysis of the likelihood of confusion are: (1) the strength of the mark; (2) the evidence of actual confusion; (3) the type of goods and degree of care likely to be exercised by the purchaser; and (4) the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page."  But  notably, the *Network Automation* Court did not limit its analysis to these four factors.  Instead, the Court considered all eight *Sleekcraft* factors, in addition to the labeling and appearance of the search results screen.

1441768.4

A proper analysis of the *Sleekcraft* factors here makes clear that, at a minimum, a reasonable jury could find a likelihood of confusion. In addition to failing properly to consider the absence of labeling on Amazon's results screen discussed above, the District Court further erred by disregarding certain of the *Sleekcraft* factors (Factors 2, 3, 5 and 7) and improperly applying others (Factors 1, 4 and 6), resulting in the erroneous granting of summary judgment in favor of Amazon.

**1. The District Court Erred in Ruling on Summary Judgment that the Strength of MTM's Mark (Factor 1) Weighs in Favor of Amazon**

In *Fortune Dynamic v. Victoria's Secret*, 618 F.3d 1025 (9th Cir. 2010), the Ninth Circuit reversed the District Court's grant of summary judgment in favor of the Defendant in a trademark infringement action. In doing so, the Court held that there were questions of fact regarding both the conceptual and commercial strength of the mark at issue, which should appropriately have been determined by a jury rather than by the district court on summary judgment.

**(a) A Jury Could Property Determine that the MTM Special Ops Mark is Conceptually Strong**

With respect to conceptual strength, the *Fortune Dynamic* Court noted the difficulty in determining whether a mark is descriptive or suggestive:

> Categorizing trademarks is necessarily an imperfect
> science. Far from being neatly distinct and discrete,
> trademark categories often 'blur at the edges and merge
> together.' *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,*
> 698 F.2d 786, 790 (5th Cir.1983), *overruled in part by*
> *KP Permanent Make-Up, Inc. v. Lasting Impression I,*
> *Inc.,* 543 U.S. 111, 116, 125 S.Ct. 542, 160 L.Ed.2d 440
> (2004) (*"KP Permanent I"*). 'The labels are more
> advisory than definitional, more like guidelines than
> pigeonholes. Not surprisingly, they are somewhat
> difficult to articulate and to apply.' *Id.; see also*
> *Abercrombie,* 537 F.2d at 9 ("The lines of demarcation...
> are not ... always bright."). The line between descriptive
> and suggestive marks is nearly incapable of precise
> description. *Lahoti v. VeriCheck, Inc.,* 586 F.3d 1190,
> 1197 (9th Cir.2009) ('[L]egions of trademark lawyers
> can stay busy arguing about how marks in the middle, not
> so plainly descriptive, nor so plainly [suggestive], should
> be categorized.').

*Id.* at 1033.

Whether the mark is categorized as "descriptive" or "suggestive" is an

important distinction, "because if the mark is suggestive, there is a stronger

likelihood that a jury could reasonably conclude that the 'strength of the mark'

factor favors Fortune." *Fortune Dynamic* 618 F.3d at 1034. There are two tests

which help distinguish between a descriptive and a suggestive mark. "First, a mark

is more likely suggestive if it passes the imagination test, which asks whether the

mark 'requires a mental leap from the mark to the product.' . . . Second, a mark is

more likely suggestive if it passes the competitor test, which asks whether 'the

suggestion made by the mark is so remote and subtle that it is really not likely to be needed by competitive sellers to describe their goods.'" *Id*.

In determining whether the DELICIOUS mark for shoes was descriptive or suggestive, the *Fortune Dynamic* Court noted that some evidence pointed to "DELICIOUS" being descriptive in the sense that it describes footwear which "afford[s] great pleasure. " *Id.* at 1034. But on the other hand, the Court explained that "a reasonable jury, viewing the evidence in the light most favorable to Fortune, might focus more on the 'taste' and 'smell' definitions of 'delicious,'" in which case "the connection between DELICIOUS and footwear becomes much more attenuated, indicating that the mark is suggestive because it 'requires a mental leap from the mark to the product.'" *Id*. As a result, the Court found that the strength of the DELICIOUS mark should have been determined by the jury, not by the district court on summary judgment:

> In sum, because '[w]hich category a mark belongs in is a question of fact,' . . . and because the decision as to whether a mark is descriptive or suggestive ' 'is frequently made on an intuitive basis rather than as a result of a logical analysis susceptible of articulation,' *Lahoti*, 586 F.3d at 1197-98 (quoting *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528 (4th Cir.1984)), *we think a jury should assess the conceptual strength of Fortune's mark in the first instance*.

*Id.* (Emphasis added.)

Similarly, in this case, the strength of MTM's marks should be assessed by the jury in the first instance, not by the court on summary judgment. As with the "Delicious" mark for shoes, the term "MTM Special Ops" requires a leap of the consumer's imagination to determine that this is a mark for military style watches.

The term MTM SPECIAL OPS is inherently distinctive when applied to watches. Even if the term "SPECIAL OPS" was descriptive (which it is not), the mark as a whole is not. It is the mark in its entirety that must be considered—not simply individual elements of the mark. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Further, the validity of a composite mark must be "determined by viewing the trademark as a whole, as it appears in the marketplace" and not by dissection. *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 912 (9th Cir. 1995). Here the term "MTM," which is the dominant portion of the mark, does not describe the purpose of the products with which it is used. *See Brookfield*, 174 F.3d at 1058. Rather, it "requires a mental leap from the mark to the product." *Id.*

Even if the term "Special Ops" were considered without MTM, this term is not descriptive as a matter of law. Rather "special ops" is a term for an elite military team, not for a watch. It takes a leap of the imagination, upon hearing the term "MTM Special Ops" to understand that the trademark is associated with a watch. Indeed, even the District Court acknowledged that the mark could be found

-37-

to be suggestive, stating that "they are at best suggestive." [ER 17.] Accordingly, here, as in *Fortune Dynamics*, "there is a stronger likelihood that a jury could reasonably conclude that the 'strength of the mark' factor favors [MTM]." *Fortune Dynamic* 618 F.3d at 1034. As a result, this factor should not have been determined by the District Court on summary judgment.

Moreover, courts recognize that when a consumer uses a trademark to look for a particular product, rather than a product category, that suggests that the trademark is distinctive rather than descriptive. *See Network Automation*, *supra* at 1149 ("a consumer searching for a generic term is more likely to be searching for a product category. . . . By contrast, a user searching for a distinctive term is more likely to be looking for a particular product.") ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████ [ER 249-250.] This suggests that consumers entering this search term were looking for MTM Special Ops watches, the specific product for which they searched. *See Network Automation* at 1150 ("Because the mark is both Systems' product name and a suggestive federally registered trademark, consumers searching for the term are presumably looking for its specific product, and not a category of goods.") As such, this suggests, at a minimum, that a reasonable jury could find that the strength of the mark factor

-38-

weighs in MTM's favor.  Accordingly, the District Court erred by deciding to the contrary on summary judgment.

> **(b)** **A Jury Could Properly Determine that the MTM Special Ops Mark is Commercially Strong**

With respect to commercial strength, the District Court also erred by deciding this issue on summary judgment.  The District Court found that in the absence of evidence of MTM's market share, MTM failed to make a showing on the commercial strength of its trademarks, which the District Court ruled was necessary to establish commercial strength.  But in *Fortune Dynamics*, the Plaintiff, like MTM, here, presented evidence of its marketing expenditure and the number of shoes sold from 2005 to 2007.  *Fortune Dynamics* at 1034-35.  After noting that "advertising expenditures can transform a suggestive mark into a strong mark," the *Fortune Dynamics* court held with respect to Plaintiff's evidence of its advertising expenditure and its sales data that "[w]hatever its ultimate force, this evidence is sufficient to make the relative commercial strength of the DELICIOUS mark a question for the jury." *Id*.

Here, Plaintiff's 2011 sales totaled approximately $4.8 million, and its advertising and marketing expenditures were $1.2 million.  [ER 321.]  Within at least the last five years, Plaintiff has advertised its watches in various popular magazines, such as *Esquire*, *Men's Journal* and *Men's Fitness*.  [ER 331.]  Plaintiff

-39-

has used its mark MTM SPECIAL OPS since 1995. [ER 286.] As was the case in *Fortune Dynamic*, this evidence is sufficient to make the relative commercial strength of the MTM SPECIAL OPS and MILITARY OPS marks a question for the jury, regardless of MTM's market share.

2. **The District Court Erroneously Ruled that Amazon Established an Absence of Actual Confusion and that This Factor (Factor 4) Weighed in Favor of Amazon**

As a preliminary matter, it is hornbook law that "actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act." *Network Automation*, *supra*, at 1151 (internal quotation marks omitted). In any event, the evidence presented by Amazon, rather than supporting Amazon's claim that there is evidence of an absence of confusion, in fact establishes the opposite: that at least *some* consumers who went onto Amazon's website and did a search for an "MTM Special Ops watch" in fact purchased a Luminox watch. This evidence, on its own, is sufficient for a reasonable jury to decide this factor in favor of MTM. Additionally, the Court improperly rejected MTM's evidence of actual confusion, disregarding MTM's evidence on this point as "too vague to constitute evidence on this point." [ER 21.] However, it is fundamental that on summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986).

-40-

A reasonable jury could certainly have concluded, from both Amazon's evidence which showed that some customers purchased other watches on the search display screen after customers had searched for an "MTM Special Ops watch," combined with MTM's evidence of reported customer confusion arising from Amazon's display of other watches when an "MTM Special Ops watch" is searched, to conclude that there was actual confusion to support a finding of a reasonable likelihood of confusion. The District Court erred by ruling on this issue on a summary judgment motion rather than presenting it to the jury for determination.

Both Amazon's and the District Court's reasoning in concluding that Amazon presented evidence of an absence of actual confusion is flawed. First, as mentioned above, even Amazon's evidence establishes that at least some customers purchased other watches from Amazon after searching for "MTM Special Ops watches." *See* Declaration of Paul Jaye, ¶ 13, ████████████████

████████████████████████████████████████

████████ [ER 250.] This alone refutes the suggestion that there is an absence of actual confusion. Absent evidence establishing that each person who bought an alternative product after searching for an "mtm special ops watch" was not confused as to the product they purchased or whether such product was affiliated with MTM – and no such evidence was presented by Amazon – Amazon has failed

-41-

to establish an absence of actual confusion as it claims and as the District Court erroneously found.

Additionally, in support of its conclusion that Amazon established an absence of actual confusion, the District Court reasoned that "there is no reason to think that those consumers searching for Luminox would exhibit different behaviors form those searching for MTM Special Ops." [ER 20.] This analysis is flawed, because it suggests that *every single* customer who searches for "MTM Special Ops Watches" and comes across a Luminox watch on the result screen must be confused, in order for liability under the Lanham Act to arise. There is no authority that requires that every single consumer who comes across an instance of infringement must experience actual confusion for liability to arise. In fact, survey evidence typically establishes a likelihood of confusion by showing that some customers are confused by the infringement, not every single customer who comes across the infringing mark. *See e.g. Playboy Enterprises*, *supra*, at 1026 (finding that expert report established a genuine issue of material fact on actual confusion where survey evidence showed that 51% of users shown the "playboy" term and 31% of users shown the "playmate" term believed that PEI sponsored or was otherwise associated with the adult-content banner ad displayed.)

Accordingly, Amazon's claim that it has established an absence of actual confusion is without merit. While no showing of actual confusion by MTM is

-42-

required, there was sufficient evidence of actual confusion for this issue to have been submitted to the jury for determination.  As such, the District Court erred in disposing of this factor in Amazon's favor on summary judgment.

**3.     The District Court Erred by Deciding the "Degree of Care and Type of Goods" Factor (Factor 7) on Summary Judgment, without Considering All Evidence Pertinent to This Factor**

In analyzing the degree of care and type of goods factor, the price of the goods is not the only consideration.  Consideration must also be given to the marketing channels, and whether the products being sold are marketed primarily to expert buyers. *See Network Automation,* 638 F.3d at 1152.  Moreover, even for expensive goods "confusion may still be likely." *Sleekcraft,* 599 F.2d at 353.  Because of the difficulty and fact intensive nature of determining the level of sophistication of the likely consumers of a given product, this factor is appropriately resolved by the jury.  *See Fortune Dynamics*, *supra* at 1038 ("Whoever's right, the difficulty of trying to determine with any degree of confidence the level of sophistication of young women shopping at Victoria's Secret only confirms the need for this case to be heard by a jury.")

The District Court erred by failing to consider any factors other than "the relatively high price of the goods in question, combined with the increased degree of care used in Internet purchases," in concluding that "consumers are presumed to

use a high degree of care in such purchases." [ER 21.] The Court failed to consider the fact that purchasers of the styles of watches are unlikely to be expert consumers, or the fact that Amazon's "one click" purchase method allows consumers to buy products with less scrutiny than shopping in a brick and mortar store, thus diminishing purchaser sophistication. [ER 247.]

In light of the totality of the evidence pertinent to this factor, this factor should have been determined by the jury, rather than by the Court on summary judgment.

## 4. The District Court Failed to Consider Amazon's Intent in Using MTM's Marks

The District Court also erred in failing to consider Amazon's intent in using MTM's marks. In *Network Automation*, *supra*, the Court found that "the defendant's intent may be relevant here, but only insofar as it bolsters a finding that the use of the trademark serves to mislead consumers rather than truthfully inform them of their choice of products." In reversing summary judgment in favor of the defendants in *Playboy Enterprises*, *supra*, the Court explained:

> This factor [i.e. Defendant's intent] favors PEI somewhat. A defendant's intent to confuse constitutes probative evidence of likely confusion: Courts assume that the defendant's intentions were carried out successfully. In this case, the evidence does not definitively establish defendants' intent. At a minimum, however, it does suggest that defendants do nothing to

-44-

> prevent click-throughs that result from confusion.
> Moreover, they profit from such click-throughs.

*Playboy Enterprises*, 354 F.3d at 1028.

The same is true here. The evidence in this case establishes, at a minimum, that Amazon did nothing to avoid confusion on the part of its customers who searched for an MTM watch, such as stating that the requested product was not carried on Amazon. Indeed, the evidence suggests that Amazon fomented such confusion by providing directly competitive search results, displaying MTM's federally registered trademark multiple times as part of the search query results, including once inside quotes, suggesting to customers that the results displayed were exactly what the customer searched for. [ER 209.] Instead, Amazon displayed directly competitive products without such labeling and profited from any purchases made by such customers. Accordingly, here, as in *Playboy Enterprises*, this factor therefore favors MTM. The District Court erred by failing to consider this factor.

**5.    The District Court Failed to Properly Consider the Proximity of the Goods (Factor 2) and the Similarity of the Marks (Factor 3), Both of Which Favor MTM**

The District Court erred by failing to consider the proximity of the goods sold by MTM and Amazon, respectively, and by failing to consider the similarity of the marks, both of which favor MTM. With respect to both factors, the Court

-45-

reasoned that these factors are only relevant if the consumer is confused, and that these factors were therefore not relevant. [ER 13-14.] Given that these are factors which assist in the determination of whether there is a likelihood of confusion, it is circular, erroneous and illogical not to consider these factors unless a determination of confusion has already been made. Simply put the products are identical in their style and function and pricing. Accordingly, both proximity of the goods and similarity of the marks should have been considered by the District Court as part of its likelihood of confusion analysis.

### (a)     Proximity of the Goods (Factor 2)

With respect to the proximity of the goods, after noting that "[r]elated goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods," the *Network Automation* Court explained that "the proximity of the goods would become less important if advertisements are clearly labeled or consumers exercise a high degree of care, because rather than being misled, the consumer would merely be confronted with choices among similar products." *See also  Playboy Enterprises*, *supra*, at 1028 ("The proximity between PEI's and its competitor's goods provides the reason Netscape keys PEI's marks to competitor's banner advertisements in the first place. Accordingly, this factor favors PEI as well.")

Here, MTM's watches and Amazon's search-generated Luminox watches

-46-

are direct competitors, who both offer identically styled military watches that consumers could easily confuse, as a visual comparison between images of MTM watches and the Luminox watches displayed by Amazon makes clear. [ER 208, 214, 232, 294.][7]

Additionally, as discussed above, there is no labeling informing persons searching for MTM Special Ops watches that those watches were not carried by Amazon and that the visually similar Luminox displayed were not MTM watches, but other products offered as an alternative. Therefore, the proximity of goods should have been considered by the District Court as part of the likelihood of confusion analysis. Given that the goods in question, namely military style watches, are identical in style, function and pricing , this factor weighs strongly in favor of MTM, and the District Court erred by failing to consider this factor.

### (b)     Similarity of the Marks (Factor 3)

In *Network Automation*, the court found that the district court had "erroneously treated "ActiveBatch," the keyword purchased by Network, as conceptually separate from ActiveBatch the trademark owned by Systems." *Id.* at 1151. The Court reasoned that "because the consumer keys in Systems' trademark, which results in Network's sponsored link, depending on the labeling and appearance of the advertisement, including whether it identifies Network's

---

[7] See images set forth at page 8, *supra*.

own mark, and the degree of care and sophistication of the consumer, it could be helpful in determining initial interest confusion." *Id.* Likewise, in *Playboy Enterprises*, the Court found in favor of the plaintiff on this factor, because "the terms defendants use are identical to PEI's marks." *Playboy Enterprises*, *supra* at 1028.

Here the district court found that in reproducing MTM's mark, "Amazon uses it identically," but nevertheless found that "this factor is not independently relevant." It was erroneous for the court to have so concluded and to have granted summary judgment in Amazon's favor without considering this factor, which weights in MTM's favor.

## VIII.

## CONCLUSION

For the foregoing reasons, MTM respectfully requests that the Court reverse the District Court's grant of summary judgment in Amazon's favor.

DATED: September 26, 2013     WOLF, RIFKIN, SHAPIRO,
                                      SCHULMAN & RABKIN, LLP


                                 By:     /s/ Eric Levinrad
                                    ERIC LEVINRAD
                                  Attorneys for Appellant
                                  MULTI TIME MACHINE, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), counsel of record certifies that:

1.     Appellant's Opening Brief contains 10,829 words, including headings, footnotes, and quotations, which is less than the 14,000 words permitted by Fed. R. App. P. 32(a)(7); and

2.     Appellant's Opening Brief is proportionally spaced using Times New Roman 14 point type as permitted by Fed. R. App. P. 32(a)(5) and (6).


DATED: September 26, 2013          WOLF, RIFKIN, SHAPIRO,
                                   SCHULMAN & RABKIN, LLP



                              By:     /s/ Eric Levinrad
                                   _____
                                   ERIC LEVINRAD
                                   Attorneys for Appellant
                                   MULTI TIME MACHINE, INC.


1441768.4

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellant, Multi Time Machine, and

its counsel, are unaware of any related case within the meaning of the rule.


DATED: September 26, 2013          WOLF, RIFKIN, SHAPIRO,
                                   SCHULMAN & RABKIN, LLP


                                   By:        /s/ Eric Levinrad
                                   _____
                                         ERIC LEVINRAD
                                   Attorneys for Appellant
                                   MULTI TIME MACHINE, INC.

1441768.4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **APPELLANT MULTI TIME MACHINE, INC.'S OPENING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 26, 2013.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

See attached Service List


/s/ John Narcise
John Narcise

1441768.4

**SERVICE LIST**

**Multi Time Machine, Inc. v. Amazon.com, Inc. and Amazon Services, LLC**
**9th Circuit Court of Appeals, Appeal No. 13-55575**

BY APPELLATE CM/ECF

| | |
|---|---|
| Allan E. Anderson | *Attorneys for Defendants/Respondents* |
| Timothy L. Skelton | AMAZON.COM, INC. AND AMAZON |
| ROPERS, MAJESKI, KOHN & BENTLEY | SERVICES, LLC |
| 515 South Flower Street, Suite 1100 | |
| Los Angeles, California 90071-2213 | * 1 unredacted hardcopy under seal by first- |
| Telephone:     (213) 312-2000 | class U.S. mail |
| Facsimile:      (213) 312-2001 | |
|   aanderson@rmkb.com | |
|   tskelton@rmkb.com | |

BY APPELLATE CM/ECF

| | |
|---|---|
| Marc C. Levy | *Attorneys for Defendants/Respondents* |
| Kathryn A. Feiereisel | AMAZON.COM, INC. AND AMAZON |
| FAEGRE BAKER DANIELS LLP | SERVICES, LLC |
| 3200 Wells Fargo Center | |
| 1700 Lincoln Street | * 1 unredacted hardcopy under seal by first- |
| Denver, Colorado 80203-4532 | class U.S. mail |
| Telephone:     (303) 607-3500 | |
| Facsimile:      (303) 607-3600 | |
|   marc.levy@FaegreBD.com | |
|   katie.feiereisel@FaegreBD.com | |

BY FIRST-CLASS U.S. MAIL

| | |
|---|---|
| Office of the Clerk | * 1 original hardcopy and 7 hardcopies by |
| James R. Browning Courthouse | first-class U.S. Mail |
| U.S. Court of Appeals | |
| P.O. Box 193939 | * 1 original unredacted hardcopy and 7 |
| San Francisco, California 94119-3939 | unredacted hardcopies under seal by first-class |
| | U.S. mail |

1441768.4