U.S. COURT OF APPEALS CASE NO. 13-55575

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
————————————————

MULTI TIME MACHINE, INC.

*Plaintiff and Appellant*

vs.

AMAZON.COM, INC. AND AMAZON SERVICES, LLC

*Defendants and Appellees*
————————————————

Appeal from the United States District Court,
Central District of California, Case No. CV11-09076-DDP (MANx)
Hon. Dean D. Pregerson
————————————————

**BRIEF OF AMICUS INTELLECTUAL PROPERTY LAW PROFESSORS
IN SUPPORT OF AMAZON.COM, INC. AND AMAZON SERVICES,
LLC'S PETITION FOR REHEARING EN BANC**
————————————————

*Of Counsel:*

REBECCA TUSHNET
GEORGETOWN LAW SCHOOL
600 New Jersey Avenue NW
Washington, DC 20001
(202) 661-6585
Rlt26@law.georgetown.edu

CATHERINE R. GELLIS, ESQ.
P.O. Box 2477
Sausalito, CA 94966
(202) 642-2849
cathy@cgcounsel.com

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... I

TABLE OF AUTHORITIES ............................................................................. II

CONSENT OF THE PARTIES ......................................................................... V

INTEREST OF AMICI .......................................................................................1

INTRODUCTION ...............................................................................................1

ARGUMENT ........................................................................................................2

I.      THE MAJORITY OPINION CONFUSED EXISTING PRECEDENT
ADDRESSING ONLINE TRADEMARK INFRINGEMENT. ...................2

      A.      By resurrecting the concept of initial interest confusion online, the
majority opinion found potential liability in a different type of
confusion than the Lanham Act bars. ............................................................2

      B.      The majority opinion's misapplication of the initial interest doctrine
lowers the standard of proof for establishing confusion. ..............................4

II.     THE MAJORITY OPINION EXPOSES INTERNET INTERMEDIARIES
TO UNPREDICTABLE LEGAL RISK. .......................................................9

CONCLUSION ..................................................................................................15

APPENDIX A ....................................................................................................16

CERTIFICATE OF COMPLIANCE ..............................................................17

CERTIFICATE OF SERVICE .........................................................................18

# TABLE OF AUTHORITIES

## Cases

1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229 (10th Cir. 2013) ……...6, 11

1-800 Contacts, Inc. v. Lens.com, Inc., 755 F. Supp. 2d 1151 (D. Utah 2010), *aff'd in relevant part*, 722 F.3d 1229 (10th Cir. 2013) ………………………...14

A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc. (A & H IV), 166 F.3d 197 (3d Cir. 1999) ………………………………………………………… ..6

AMP Inc. v. Foy, 540 F.2d 1181 (4th Cir. 1976) ……………………….……… 6

Brookfield Commc'ns v. West Coast Entm't Corp., 174 F.3d 1036 (9th Cir. 1999)…………………………………………………………………..2, 5

Coca-Cola Co. v. Dorris, 311 F.Supp. 287 (E.D. Ark. 1970)……………………11

Coca-Cola Co. v. Foods, Inc., 220 F.Supp. 101 (D.S.D. 1963) …………………11

Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250 (9th Cir. 1982) ………………11

Coca-Cola Co. v. Pace, 283 F.Supp. 291 (W.D. Ky. 1968) ……………………11

Conopco, Inc. v. May Dept. Stores Co., 46 F.3d 1556 (Fed. Cir. 1994) ……..9, 10

Estee Lauder, Inc. v. The Gap, Inc., 108 F.3d 1503 (2d Cir. 1997)………………5

Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., 778 F.3d 1059 (9th Cir. 2015)…8

Fisher Stoves, Inc. v. All Nighter Stove Works, 626 F.2d 193 (1st Cir. 1980)……5

Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc., 618 F.3d 1025 (9th Cir. 2010) ………………………………………………6

Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP, 423 F.3d 539 (6th Cir. 2005)………………………………………………………………… 9

Interstellar Starship Serv. v. ePix, 304 F.3d 936 (9th Cir. 2002)…………………2

KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111 (2004)………………………………………………………………………7

Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC, 745 F.3d 877 (8th Cir. 2014)………………………………………………………………………..6

Multi Time Mach., Inc. v. Amazon.com, --- F.3d ----, 2015 WL 4068877 (9th Cir. July 6, 2015) …..……………………………………………………*passim*

Multi Time Mach., Inc. v. Amazon.com, 926 F. Supp. 2d 1130 (C.D. Cal. 2013), *rev'd*, --- F.3d ----, 2015 WL 4068877 (9th Cir. July 6, 2015) …………. 6-7

Network Automation v. Advanced Sys. Concepts, 638 F.3d 1137 (9th Cir. 2011) ………………………………………………………………… 2, 11, 12

Parks v. LaFace Records, 329 F.3d 437 (6th Cir. 2003)…………………………..6

Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1 (1st Cir. 2012) …… 6

Playboy Enterprises v. Netscape Commc'ns Corp., 354 F.3d 1020 (9th Cir. 2004) …………………………………………………………………………3

Sorensen v. WD-40 Co., --- F.3d ---, 2015 WL 3634612 (7th Cir. Jun. 11, 2015)…………………………………………………………………………6

Toyota Motor Sales, U.S.A., v. Tabari, 610 F.3d 1171 (9th Cir. 2010) ………. 2, 3

Vail Associates, Inc. v. Vend–Tel–Co., Ltd., 516 F.3d 853 (10th Cir. 2008) …….7

Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205 (2000)…………… 9-10

Water Pik, Inc. v. Med-Systems, Inc., 726 F.3d 1136 (10th Cir. 2013) …………. 6

Xtreme Lashes, LLC v. Extended Beauty, Inc., 576 F.3d 221 (5th Cir. 2009)……6

**Other Authorities**

David J. Franklyn & David A. Hyman, *Trademarks as Search Engine Keywords: Much Ado About Something?*, 26 Harv. J.L. & Tech. 481 (2013) ………… 8

Eric Goldman, *Deregulating Relevancy in Internet Trademark Law*, 54 Emory L.J. 507 (2005) …………………………………………………………….. 14

Glynn S. Lunney, Jr., *Trademarks and the Internet: The United States' Experience*, 97 Trademark Rep. 931 (2007) …………………………………………3

## CONSENT OF THE PARTIES

Counsel for Appellees, Amazon.Com, Inc. and Amazon Services, LLC, consented to the filing of this brief. Counsel for Appellant Multi Time Machine, Inc. declined to consent. Amici's motion for leave to file this Amicus Brief is filed concurrently herewith.

## INTEREST OF AMICI

Amici, listed in Appendix A, are academics who teach, research, and write in the area of intellectual property law, and have an interest in the coherent development and application of the Lanham Act.[1]

## INTRODUCTION

In breathing new life into the doctrine of initial interest confusion, the majority opinion has further muddled existing precedent; lowered the standard of confusion required by the Lanham Act; and exposed Internet intermediaries to wide-ranging, unavoidable liability.  For these reasons the petition for rehearing en banc should be granted to restore coherence and predictability to trademark infringement doctrine, particularly as it applies to trademark use on the Internet.

---

[1] Academic affiliations are listed in Appendix A for identification purposes only. Amici hereby state that none of the parties to this case, nor their counsel, authored this brief in whole or in part; no party or any party's counsel contributed money intended to fund preparing or submitting the brief; and no one else other than Amici and their counsel contributed money that was intended to fund preparing or submitting this brief.

# ARGUMENT

## I.  THE MAJORITY OPINION CONFUSED EXISTING PRECEDENT ADDRESSING ONLINE TRADEMARK INFRINGEMENT.

### A.  By resurrecting the concept of initial interest confusion online, the majority opinion found potential liability in a different type of confusion than the Lanham Act bars.

Trademark infringement occurs when there is (1) confusion (2) about the origin or source of a good or service (3) that harms a trademark owner.  Initial interest confusion often describes a distinctly different sort of confusion and thus has proven impossible to define or apply in any coherent fashion, as a review of this Court's cases indicates.  This incoherence explains why, prior to the majority opinion, this Court has increasingly given the concept short shrift, especially in the online context.  *Compare* Brookfield Commc'ns v. West Coast Entm't Corp., 174 F.3d 1036, 1064 (9th Cir. 1999) (speculating about initial interest confusion over similar domain names), *with* Interstellar Starship Serv. v. ePix, 304 F.3d 936, 946 (9th Cir. 2002) (finding confusion over domain names unlikely due to site content); Toyota Motor Sales, U.S.A., v. Tabari, 610 F.3d 1171, 1179 (9th Cir. 2010) (similar with respect to domain name); *see also* Network Automation v. Advanced Sys. Concepts, 638 F.3d 1137, 1152 (9th Cir. 2011) (finding confusion unlikely due to labeling of individual search results).

Before the majority decision it was clear that, at a minimum, mere *diversion*

of a prospective customer's attention was not actionable. Playboy Enterprises v.

Netscape Commc'ns Corp., 354 F.3d 1020, 1034, 1035 (9th Cir. 2004) (Berzon, J.,

concurring). Offering a different deal to a consumer who expresses interest in a

specific brand is beneficial competition, not confusion. It is not the sort of

confusion the Lanham Act precludes or needs to preclude, particularly in online

environments, where the consumer's costs to reconsider a decision to click on a

result are minimal (as opposed to, for example, the costs involved in mistakenly

driving to a store or sitting through a full sales presentation). *See, e.g.*, *Tabari*, 610

F.3d at 1179 (holding that ease of navigating back through a website makes initial

interest confusion inapplicable); Glynn S. Lunney, Jr., *Trademarks and the*

*Internet: The United States' Experience*, 97 Trademark Rep. 931, 949-50 (2007)

(explaining that the justification for the doctrine does not exist online due to the

minimal costs involved with online searching).

Because of the risk of suppressing legitimate competition, initial interest

confusion should rarely if ever be invoked where consumers have easy access to

other options, as they do online. As the majority opinion framed it, however, the

doctrine essentially presumes an entitlement by the trademark owner to an

exclusive right to the attention of consumers who begin their product searches by

considering one brand. Multi Time Mach., Inc. v. Amazon.com, --- F.3d ----, 2015

WL 4068877, at *4 (9th Cir. July 6, 2015) [hereinafter *MTM*] ("The issue is that

the defendant's use of the mark would cause initial interest confusion by attracting potential customers' attention to buy the infringing goods because of the trademark holder's hard-won reputation."). MTM is upset by the prospect that, if a consumer searched for one of its watches, he might be tempted by offers of other nice watches to buy instead. *MTM*, 2015 WL 4068877, at *1. But as long as the other nice watches are not sold as MTM watches, the consumer's decision to purchase a different watch (or even no watch at all) is not a competitive injury the Lanham Act recognizes.

> **B.      The majority opinion's misapplication of the initial interest doctrine lowers the standard of proof for establishing confusion.**

The majority opinion also erred by applying a lower standard of proof for determining whether the sort of confusion the Lanham Act barred had occurred. *See MTM*, 2015 WL 4068877, at *4 ("A jury could infer that users who are confused by the search result will *wonder* whether a competitor has acquired MTM

or is otherwise affiliated with or approved by MTM.") (emphasis added);[2] *id.*

(finding a "*possibility* of initial interest confusion") (emphasis added). A

consumer who wonders "why did I get these search results?" is aware that there are

multiple possible answers, including the most plausible: that these products are

similar to the product for which she searched. Such "wondering" does not equate

to likely confusion.

Other circuits have uniformly held that "likelihood" of confusion means the

probability of confusion, not the mere possibility. *See, e.g.*, Estee Lauder, Inc. v.

The Gap, Inc., 108 F.3d 1503, 1510 (2d Cir. 1997) ("[L]ikelihood of confusion

means a probability of confusion; it is not sufficient if confusion is merely

---

[2] For this proposition, the majority cited *Brookfield*, 174 F.3d at 1057, an inapposite case because it involved *both* parties using the mark MOVIEBUFF or MOVIE BUFF to identify themselves, whereas here it is undisputed that no MTM competitor uses MTM's marks to identify competing watches. *Id.* at 1054 ("Where the two marks are entirely dissimilar, there is no likelihood of confusion. 'Pepsi' does not infringe Coca–Cola's 'Coke.' Nothing further need be said."). Mere uncertainty about the relationship between MTM and third parties is not confusion as to the source of a product. *See* Fisher Stoves, Inc. v. All Nighter Stove Works, 626 F.2d 193, 195 (1st Cir. 1980) (questions about affiliations between two companies indicate that customers were aware of different product sources).

possible." ) (further quotations and citation omitted).[3] Even this Court has usually used the correct "likelihood" standard. *See, e.g.*, Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012). In straying from that standard now, the majority opinion increases the uncertainty about when trademark infringement liability may be found in this circuit.

The majority opinion additionally created a conflict with *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013), by failing to address the import of Amazon's clickthrough evidence. *MTM*, 2015 WL 4068877, at *8. Amazon had submitted evidence indicating how many users clicked through and bought products based on their "MTM special ops" searches. Such evidence puts an upper bound on the number of potentially initially confused consumers. *See 1-800 Contacts*, 722 F.3d at 1244-45 (clickthrough evidence sets maximum for initial interest confusion); *id.* at 1249 (such results are "hard data" that should be weighed in the confusion analysis); Multi Time Mach., Inc. v. Amazon.com, 926 F. Supp. 2d 1130, 1140 (C.D. Cal. 2013) (discussing the clickthrough evidence), *rev'd*, ---

---

[3] *See also, e.g.*, Sorensen v. WD-40 Co., --- F.3d ---, 2015 WL 3634612, at *8 (7th Cir. Jun. 11, 2015) (likelihood is the standard, not possibility); Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC, 745 F.3d 877, 887 (8th Cir. 2014) (same); Water Pik, Inc. v. Med-Systems, Inc., 726 F.3d 1136, 1150-51 (10th Cir. 2013) (same); Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 9-10 (1st Cir. 2012) (same); Xtreme Lashes, LLC v. Extended Beauty, Inc., 576 F.3d 221, 226 (5th Cir. 2009) (same); Parks v. LaFace Records, 329 F.3d 437, 446 (6th Cir. 2003) (same); A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc. (A & H IV), 166 F.3d 197, 205 (3d Cir. 1999) (same); AMP Inc. v. Foy, 540 F.2d 1181, 1186 (4th Cir. 1976) (same).

F.3d ----, 2015 WL 4068877 (9th Cir. July 6, 2015). Instead, the majority allowed a hypothesis about affiliation confusion—unsupported by any evidence—to overwhelm empirical evidence demonstrating that there was no confusion. In doing so, the majority misapplied the summary judgment standard. If allowed to stand, this opinion will relieve plaintiffs of their burden in every Lanham Act case to *prove* likely confusion, no matter the type of confusion claimed, and impermissibly shift that burden to the defendant. KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 121–22 (2004); *see also* Vail Associates, Inc. v. Vend–Tel–Co., Ltd., 516 F.3d 853, 872 (10th Cir. 2008) ("[A court] cannot simply assume a likelihood of initial interest confusion, even if it suspects it [… as the] proponent of such a theory must prove it."). Given the majority's discounting of Amazon's empirical evidence, such a burden may prove insurmountable.

Furthermore, by deviating from this Court's own standards of proof, the majority substituted what is at most confusion about how search engines work with confusion as to the source or sponsorship of a product. *MTM*, 2015 WL 4068877, at *7 ("[customers might not] understand *why* they received certain non-responsive search results when they searched for products that are not carried by Amazon."); *see also id.* at *4 ("A jury could infer that users who are confused by the search results are confused as to *why* MTM products are not listed") (emphasis added). Even assuming a jury could find that consumers were confused about why MTM

products were not listed or other products were, this sort of confusion is not confusion about "the *sponsorship or approval* of the goods bearing the marks at issue" in the case. Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., 778 F.3d 1059, 1069 (9th Cir. 2015). Confusion of the former does not amount to confusion of the latter.

Neutral empirical studies have confirmed that using trademarks to trigger search results causes minimal confusion about source or sponsorship, but that consumers are generally highly confused about *why* search results appear, particularly about whether they are paid or organic. *See* David J. Franklyn & David A. Hyman, *Trademarks as Search Engine Keywords: Much Ado About Something?*, 26 Harv. J.L. & Tech. 481 (2013). In other words, the majority's assumptions about the effects of general phrases such as "we found [X] results for your search" on consumer understanding, *see MTM*, 2015 WL 4068877, at *7, would be unwarranted even if they were relevant. Trademark infringement only arises when there is confusion *about trademarks*. Confusion about search engine behavior cannot be taken as proof of the type of confusion the Lanham Act prohibits.

## II.    THE MAJORITY OPINION EXPOSES INTERNET INTERMEDIARIES TO UNPREDICTABLE LEGAL RISK.

In straying from precedent, the majority invented a new category of "initial search result affiliation confusion" that has no sound basis in trademark law. Under this new rule, a plaintiff may reach a jury, not by showing evidence of a likelihood of confusion as to source affiliation, but by cobbling together fragments of different theories.  Creation of such a new category of confusion is unwarranted, particularly in the absence of any evidence bearing out the Court's hypothesized concern that a substantial number of consumers are confused about how a company that appears in a search for a competitor might be related to the searched-for product.  *See* Conopco, Inc. v. May Dept. Stores Co., 46 F.3d 1556, 1563  (Fed. Cir. 1994) ("The problem with the testimony is that Mrs. Sickles' confusion arose at least in part from her assumption … that national brand manufacturers secretly market private label brands. First, there is no evidence that this assumption is widely held by the relevant consumers, the vantage point from which the confusion issue must ultimately be addressed."); *cf.* Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP, 423 F.3d 539, 552-53  (6th Cir. 2005) (rejecting new category of "initial interest post-sale confusion").  Given the potentially anticompetitive effects of even ultimately unsuccessful trademark lawsuits, defendants should not be subjected to the burden of trial in such circumstances.  *See* Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 213-14 (2000) (unclear tests for trademark

infringement facilitate plausible threats of suit and suppress competition).

Without evidence that a substantial number of relevant consumers actually assume affiliation between companies with completely different names merely because they appear in search results, a defendant should be entitled to summary judgment on likelihood of confusion. If that evidence is no longer required, there are no limits to the initial search results affiliation theory of confusion other than a judge's individual biases.[4] The ways in which this speculation can be infinitely extended, subject only to the creativity of plaintiffs' lawyers, demonstrates the danger of weakening the "likelihood of confusion about source or sponsorship" standard into a "possibility of wondering about search" standard.[5] This lesser standard, predicated entirely on speculation about what a customer might assume about business associations, would necessarily expose intermediaries to uncontainable legal risk.

The majority appears preoccupied with the fact that Amazon did not expressly disclaim that it had any MTM products to display in response to the search. *MTM*, 2015 WL 4068877, at *4. To use the "No Coke. Pepsi" example,

---

[4] Here, for instance, the majority is confident that no one would think that Pepsi had purchased Coke—despite the fact that large food companies often merge.
[5] For example, Trader Joe's does not carry Cheerios, but does carry its own house brand of "o" cereal. Under the majority's logic, consumers who searched for Cheerios at Trader Joe's and didn't find it, but did find Joe's Os, might wonder whether Cheerios had started selling its cereal under the Trader Joe's house mark. *Cf. Conopco*, 46 F.3d at 1563 (rejecting this theory of confusion).

10

the majority seems to think Amazon should have said "no MTM." *Id.* at \*4 n.6. But in real-world beverage substitution cases, courts have found liability only when a substitution has been made "without comment," meaning without explicitly naming the restaurant's beverage as Pepsi. *See, e.g.*, Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1252 (9th Cir. 1982); Coca-Cola Co. v. Dorris, 311 F.Supp. 287, 292 (E.D. Ark. 1970); Coca-Cola Co. v. Foods, Inc., 220 F.Supp. 101, 103 (D.S.D. 1963); Coca-Cola Co. v. Pace, 283 F.Supp. 291, 293 (W.D. Ky. 1968). Notably, in the dissent's example, John Belushi had not simply handed the customer an unlabeled glass of soda without any indication that it was not made by Coca-Cola. Like Belushi, Amazon listed the watch inventory it did have, including each item's source identifier.

Prior to the majority opinion, what Amazon did was sufficient to avoid infringement liability. As *Network Automation* squarely held, it is the labels of the individual results, not the label applied by the search engine to its overall results, that matter for trademark purposes. *Network Automation*, 638 F.3d at 1147–48; *see also 1-800 Contacts*, 722 F.3d at 1245 ("[T]he substantial dissimilarity between [the parties' marks] can be expected to greatly reduce the chance that the consumers will think that the parties are related enterprises; the similarity of the search term and 1–800's mark is of minor relevance…. [An] inference [that a trademark owner is the source of another webpage] is an unnatural one when the

entry is clearly labeled as an advertisement and clearly identifies the source, which has a name quite different from the business being searched for."). The presence, or absence, of any further disclaiming statement should therefore be irrelevant.

Furthermore, even if Amazon had done more, it would have been a futile exercise. Including a disclaimer that Amazon "couldn't find any results for 'MTM Special Ops,'" as the majority suggests should have been added, would not have addressed the majority's hypothesized association harm because this sort of statement says nothing about any potential *association* between the search term and resulting listings.[6]

The majority's theory of liability can also not be limited to instances when Amazon could not return any exact matches. Liability could attach whenever any result listed a product that not produced by the company named in the original search, which could generate the same kind of "wondering" about why the result appeared. The impact on the standard practice of Internet intermediaries[7] by the

---

[6] Consider the majority's proposed statement, "We didn't find any results for 'MTM Special Ops,'" followed by "Here are results for MTM Blackhawk" (a different MTM product). The majority's statement would still be completely true despite the affiliation between the searched-for product and the products shown in the results. The no-results statement says nothing about affiliation or association— and neither does its absence.

[7] Although in this case Amazon is an Internet intermediary that remains involved in most transactions after search, the majority decision affects any search engine, both because Amazon also provides search results for third parties and because courts have deemed search engines' keyword usage to be sufficient to trigger the Lanham Act. *See, e.g.*, *Network Automation*, 638 F.3d at 1145.

majority opinion would be significant. For example, the following image shows a Bing search for "mtm special ops watch." Competing and complementary products that appear as a result of this search include the 5.11 Tactical Field Ops Watch (image on far right) and 5.11 Tactical Duty Kilt (first text ad on right), along with the "related searches" Best Military Watches for Men and Military Watch Co. (leading to a competing company's site).



Under the majority's theory, all these results are possibly confusing and hence actionable—especially the ones that claim to be "related" —because the fact that

---

[8] Search performed July 19, 2015.

any non-trademark owner products appear at all is what leads to the majority's "possibility" of consumers wondering about affiliation.

There is little that could be done to dispel this risk: neither automatically programmed search engines nor individual sales associates are likely to be able to produce corporate organization charts to explain relationships, or lack thereof, between entities whose actual names bear no similarity to one another. A watch seller who attempts to tempt a consumer in its store from an MTM watch to a higher-end brand thus risks the same liability as Amazon does, with much shallower pockets to defend itself.

Particularly for online entities, the precedent is chilling to previously legal practice. For instance, a number of search engines engage in "broad matching," where search results appear as a result of the searcher's use of generic terms, such as "watch" in the phrase "mtm special ops watch." *See* 1-800 Contacts, Inc. v. Lens.com, Inc., 755 F. Supp. 2d 1151, 1174 (D. Utah 2010), *aff'd in relevant part*, 722 F.3d 1229 (10th Cir. 2013); Eric Goldman, *Deregulating Relevancy in Internet Trademark Law*, 54 Emory L.J. 507, 541 (2005). The majority's "initial affiliation confusion" theory threatens the existing rule that broad matching is a legitimate, pro-competitive practice, given that consumers may not know which word in their searches triggered the results. *1-800*, 755 F. Supp. 2d at 1174 ("It is beyond dispute that a competitor cannot be held liable for purchasing a generic keyword to

trigger an advertisement that does not incorporate a holder's mark in any way, even if that competitor's advertisement appeared when a consumer entered a trademarked search term.").

Under the majority's opinion, to avoid liability, an online intermediary like Amazon would be required to know when a set of words for which it can return no exact match is in fact a trademarked term, and that its search results are for competitors' products . But intermediaries often lack such knowledge. Given how many trademarks there are, across so many product categories, this rule creates an impossible standard for search engines to meet in order to avoid liability.

## CONCLUSION

In order to rationalize this Court's own precedent, avoid conflict among the circuits, and prevent unforeseeable expansion of liability for search providers, Amazon's petition for rehearing en banc should be granted.

Dated: July 30, 2015                    RESPECTFULLY SUBMITTED,


                                        By: _/s/ Catherine R. Gellis_____

*Of Counsel:*                           CATHERINE R. GELLIS, ESQ.
                                        P.O. Box 2477
REBECCA TUSHNET                         Sausalito, CA 94966
GEORGETOWN LAW SCHOOL                   (202) 642-2849
600 New Jersey Avenue NW                cathy@cgcounsel.com
Washington, DC 20001
(202) 661-6585                          *Counsel for Amici Curiae*
Rlt26@law.georgetown.edu

# APPENDIX A

Barton Beebe, John M. Desmarais Professor of Intellectual Property Law, NYU School of Law

Stacey L. Dogan, Professor, Boston University School of Law

Christine Haight Farley, Professor, American University Washington College of Law

Eric Goldman, Professor, Santa Clara University School of Law; Co-Director, High Tech Law Institute

James Grimmelmann, Professor of Law & Director of Intellectual Property Program, University of Maryland

Michael Grynberg, Associate Professor of Law, DePaul College of Law

Jessica Litman, John F. Nickoll Professor of Law and Professor of Information, University of Michigan

Glynn Lunney, Professor of Law, Texas A&M University School of Law

Mark P. McKenna, Professor of Law and Notre Dame Presidential Fellow, Notre Dame Law School

Tyler Ochoa, Professor of Law, Santa Clara University School of Law

Betsy Rosenblatt, Associate Professor and Director, Center for Intellectual Property Law, Whittier Law School

Rebecca Tushnet, Professor of Law, Georgetown Law

## CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached brief is proportionally spaced, has a typeface of 14 points and contains 3394 words.

/s/ Catherine R. Gellis
_____
CATHERINE R. GELLIS, ESQ.
P.O. Box 2477
Sausalito, CA 94966
(202) 642-2849
cathy@cgcounsel.com
*Counsel for Amicus Law Professors*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 30, 2015.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that one of the participants in the case is not a registered CM/ECF user. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participant:

> Michael S. Culver, Director
> Millen, White, Zelano & Branigan, P.C.
> 2200 Clarendon Boulevard, Suite 1400
> Arlington Courthouse Plaza I
> Arlington, VA 22201 USA

/s/ Catherine R. Gellis